

CLOSED CIVIL CASE

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 08-61130-CIV-MORENO**

JAY S. SPECHLER,

      Plaintiff,

vs.

VICTOR TOBIN,

      Defendant.

_____/

## ORDER GRANTING MOTION TO DISMISS

"For after all, the best thing one can do when it is raining is to let it rain." Rather than heed Henry Wadsworth Longfellow's famous words, Plaintiff, former Broward County Judge Jay Spechler resigned his judgeship one business day after receiving a letter from Chief Judge Victor Tobin. The letter, which forms the crux of Plaintiff's complaint under 42 U.S.C. § 1983, reassigned Plaintiff to work on a civil traffic docket and indicates that Plaintiff should not return to the central courthouse without permission. *See* Exh. A (the reassignment letter). The alleged reason for Plaintiff's resignation -- the docket to which he was assigned did not exist on the day he received the reassignment letter. *See* Exh. B (the resignation letter).

Chief Judge Tobin has moved to dismiss this suit asserting qualified immunity. Because the Court agrees that Chief Judge Tobin was acting within his discretion as the Chief Judge in reassigning former Judge Spechler to a separate division, the Court grants him qualified immunity. Moreover, the Court also finds that Plaintiff lacks standing. By resigning and failing to pursue a remedy in the Florida courts to redress his reassignment, Plaintiff cannot establish that Defendant's

actions are "causally connected" to the injuries claimed. Having found Chief Judge Tobin acted within his discretion, the Court also finds sovereign immunity bars the Plaintiff's state law claims.

## I. Background

Plaintiff, Jay S. Spechler, is a former County Court Judge in Broward County who is suing Chief Judge Victor Tobin in his individual capacity under 42 U.S.C. § 1983. Chief Judge Tobin has moved to dismiss claiming he has qualified immunity from the federal claims and sovereign immunity on the state law claims.

On March 31, 2008, Plaintiff resigned his judgeship, which he had held since he was elected in 1988. Plaintiff had approximately five years left in his fifth term in office when he resigned. Plaintiff's claim is that he was forced to resign when Chief Judge Tobin "banished" him to a satellite court office and to a nonexistent court docket.

Plaintiff alleges that he received a confidential letter from Chief Judge Tobin on March 28, 2008. The letter[1] dated March 27, 2008 and delivered by hand reads as follows:

> Dear Judge Spechler:
> This will serve as notice of your reassignment to civil traffic and parking ticket cases at the satellite courthouses for Broward County, Florida effective March 28, 2008. You are not to return to the Central Courthouse except at my direction. I am also requesting you provide me with a telephone number where you may [be] reached with regard to your judicial duties. Your judicial assistant, Lori Brave, shall continue support for County Civil Division 52.
>
> While you are assigned to civil traffic and parking ticket dockets at

---

[1]After oral argument on the motion to dismiss, the Court ordered Plaintiff to provide a copy of the resignation letter and the reassignment letter. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (stating a document can be considered by a court on a motion to dismiss when the document is central to plaintiff's claim and is undisputed (i.e. authenticity not challenged)).

the satellite courthouses, the Clerk of Court will provide you with the dockets. You will communicate with the staff for the Clerk of Court and Judge Zeller to determine dates and times for dockets.

Sincerely,
Victor Tobin
Chief Judge

Plaintiff alleges that his new assignment in the satellite courthouses was bogus and Judge Sharon Zeller's lack of response to Plaintiff's inquiry about the docket is proof of the docket's nonexistence. Plaintiff claims that he separately confirmed with the Clerk's staff that no dockets existed in the satellite courthouse on March 28, 2008. Defendant has provided the Court with an Administrative Order of the Courts of Broward County, which establishes the dockets of the satellite courthouses. *See* Exh. C (Administrative Order VI-07-A-1A).

As a result of receiving this letter, Plaintiff claims he had no choice but to postpone two personal foreclosure proceedings that had been previously set for early April 2008. He ultimately obtained favorable judgments in both foreclosure actions but claims the "notice of banishment" precluded him from personally attending the sheriff sales once he obtained those judgments.

When confronted with questions about the "notice of banishment," Chief Judge Tobin provided no comment to the press, which Plaintiff claims was a calculated response to cast a shadow over Plaintiff's reputation as a County Judge. Plaintiff resigned his post as a County Court Judge by letter dated Monday March 31, 2008 after receiving Chief Judge Tobin's reassignment letter on Friday March 28, 2008. The resignation letter to Governor Charlie Crist reads as follows:

Dear Governor Crist,
Please allow this to serve as notice of my resignation as Broward County Judge effective Monday March 31, 2008 at 5 P.M.
It has been an honor and privilege to have served the people of

-3-

> Broward County and the State of Florida during the past 20 years.
> I look forward to continue working in the legal system in the future.
>
> Cordially,
> Jay Spechler
> Broward County Judge

The harm that Plaintiff claims he suffered due to the "notice of banishment" is best quoted from the amended complaint:

> Defendant deprived the Plaintiff of 1) his constitutional guarantee of liberty to enter public places, such as the courthouse, without interference, to (a) conduct personal business, (b) avail himself of the courthouse library, and (c) assemble or meet with his fellow judges; and (2) his constitutional right of access to the courthouse to pursue personal litigation.

Plaintiff's five-count amended complaint alleges the following causes of action: 1) a violation of 42 U.S.C. § 1983 by Defendant for depriving Plaintiff of a his access to a public place and the courts, his property interest (i.e. his job) without due process, and his liberty interest (i.e. stigma to his reputation) without due process of law; 2) a violation of the Florida Constitution for not allowing the Judicial Qualifications Commission and the Supreme Court to conduct their investigative and disciplinary functions; 3) constructive discharge; 4) intentional infliction of emotional distress; and 5) false light invasion of privacy.

## II. Legal Standard

On a motion to dismiss, the Court must view the complaint in the light most favorable to the plaintiff. *Glover v. Ligett Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's

obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted). A complaint must have "enough facts to state a claim to relief that is plausible on its face"; if it does not "nudge[] the[] claims across the line from conceivable to plausible, [it] must be dismissed." *Id.* at 1974.

Generally, "the Court is constrained to review the allegations as contained within the four corners of the complaint and may not consider matters outside the pleading without converting the defendant's motion into one for summary judgment." *Makro Capital of Am., Inc. v. UBS AG*, 372 F. Supp. 2d 623, 627 (S.D. Fla. 2005) (quoting *Crowell v. Morgan Stanley Dean Witter Servs. Co.*, 87 F. Supp. 2d 1287, 1290 (S.D. Fla. 2000)). However, "[t]he Eleventh Circuit has held that, when considering a 12(b)(6) motion to dismiss, a court may take judicial notice of the public record, without converting the motion to one for summary judgment, because such documents are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Id.* (quoting *Davis v. Williams Comms., Inc.*, 258 F. Supp. 2d 1348, 1352 (N.D. Ga. 2003)).

### III. Legal Analysis

A. Qualified Immunity

The qualified immunity defense may be raised and addressed on a motion to dismiss, and will be granted if the complaint "fails to allege the violation of a clearly established constitutional right." *Smith v. Siegelman*, 322 F.3d 1290, 1294 (11th Cir. 2003) (quoting *Williams v. Ala. State Univ.*, 102 F.3d 1179, 1182 (11th Cir. 2003)). The doctrine protects government officials sued in their

individual capacities as long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). Only "the plainly incompetent or those who knowingly violate the law" are subjected to liability. *Chesser v. Sparks*, 248 F.3d 1117, 1122 (11th Cir. 2001).

### 1. *Was Chief Judge Tobin Acting Within Scope of Discretionary Authority in Reassigning County Judge Spechler?*

To establish a qualified immunity defense, "the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Vinyard*, 311 F.3d at 1346 (quoting *Lee*, 284 F.3d at 1194)). To act within the scope of discretionary authority means that "the actions were (1)undertaken pursuant to the performance of [the official's] duties and (2) within the scope of [his] authority." *Collier v. Dickinson*, 477 F.3d 1306, 1308 FN. 1 (11th Cir. 2007) (quoting *Lenz v. Winburn*, 51 F.3d 1540, 1545 (11th Cir. 1995)).

There is no question that Chief Judge Tobin was acting within his discretionary authority. The Florida Rules of Judicial Administration grant a Chief Judge the plenary authority to exercise administrative supervision over judges in the circuit. Relocating Plaintiff to a satellite courthouse and changing his case assignment is within that authority. Fla. R. Jud. Adm. 2.215 ("The Chief Judge . . . shall develop an administrative plan for the efficient and proper administration of all courts within that circuit. The plan shall include an administrative organization capable of effecting the prompt disposition of cases; assignment of judges . . .; control of dockets; regulation and use of

courtrooms. . ..").  Defendant also had Florida constitutional and statutory authority to reassign

Plaintiff. *See* Fla. Const. Art. V, § 2(d) (" The chief judge shall be responsible for the administrative

supervision of the circuit courts and county courts in his circuit."); § 43.26(2)(a), Fla. Stat. (2007)

("The chief judge of the circuit shall have the power: (a) To assign judges to any division of the court

and to determine the length of the assignment.").

Plaintiff's allegations that Defendant acted outside his discretionary authority and usurped

the Judicial Qualifications Committee and Florida Supreme Court's functions are without merit as

Defendant did not discipline Plaintiff in the legal sense.  The Florida Constitution states:

> Discipline; removal and retirement.--
> (a) JUDICIAL QUALIFICATIONS COMMISSION.-- . . .
> (1) There shall be a judicial qualifications commission vested with jurisdiction to
> investigate and recommend to the Supreme Court of Florida the removal from office
> of any justice or judge whose conduct. . . demonstrates a present unfitness to hold
> office, and to investigate and recommend the discipline of a justice or judge . .
> .whose conduct warrants such discipline.  For purposes of this section, discipline is
> defined as any or all of the following: reprimand, fine, suspension, with or without
> pay, or lawyer discipline.

Fla. Const. Art. V § 12(a)(1). The allegations in the complaint do not establish that Plaintiff was

reprimanded, fined or suspended.  It merely required Plaintiff to obtain permission, which he sought

and obtained to enter the central courthouse, since he was being relocated to a satellite courthouse

-- something which is clearly within the Chief Judge's authority to do under the Florida Rules of

Judicial Administration and the Florida Constitution.

Plaintiff urges the Court that there is an issue of fact for a jury as to Chief Judge Tobin's

motive in reassigning him to another docket, which had not been clearly established on the date of

the reassignment. Just as the Court accepts as true Plaintiff's allegation that the docket was

nonexistent on the day he received the letter from Chief Judge Tobin, the Court may also take judicial notice of the Administrative Order setting forth the work to be conducted at the satellite courthouses. It is well-settled that the Court may take judicial notice of the public record, without converting the motion to dismiss to a motion for summary judgment. *Makro Capital of Am., Inc.*, 372 F. Supp. 2d at 627 (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271 1279-1280 (11th Cir. 1999)). The Administrative Order establishing the dockets at the satellite courthouses is one such document, "whose accuracy cannot reasonably be questioned." *Id.* In light of this Administrative Order, the Court cannot find that Chief Judge Tobin exceeded his authority by reassigning him to a satellite office, even though no precise docket of cases was available to Plaintiff on the specific date of reassignment.  Such reassignment cannot be viewed as a "reprimand" or "discipline."  To rule otherwise would subject all of Florida's Chief Judges to lawsuits claiming improper motivation in reassigning judges to divisions that are not a particular judge's first choice.  When a judge is appointed or elected in Florida, he is a constitutional officer for either County or Circuit Court and not for a particular division (e.g. family, juvenile, dependency, traffic, etc.).

## 2. Do the allegations establish any constitutional violations?

Once the public official establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate.  First, the Court must determine whether the allegations, if true, establish a constitutional violation.  *Danley v. Allen*, 540 F.3d 1298, 1306 (11th Cir. 2008); *Siegelman*, 322 F.3d at 1295.  If there is a violation of a constitutional right under the plaintiff's version of the facts, "the next sequential step is to ask whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  In this case, Plaintiff claims he was deprived of: (1) a property interest in his judgeship; (2) a liberty interest in

-8-

accessing the courts; and (3) a liberty interest in preserving his reputation, without due process of law.

### a. Property Interest

To assert entitlement to a due process claim based upon a property interest in employment, a plaintiff must establish a "legitimate claim of entitlement" to continued state employment. *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). A court must look to state law to determine whether the terms and conditions of a plaintiff's employment create a property interest in continued employment. *Id.* In Florida, judges are not employees of their chief judges. They are constitutional officers who attain and retain office through election or appointment by the Governor. *See* Fla. Const. Art. V, § 10; Fla. Const. Art. V, § 11. The complaint establishes that Plaintiff had a legitimate claim of entitlement in his position as a County Judge. However, he is not entitled to a particular division. Nor is he constitutionally entitled to avoid certain divisions, such as hearing traffic cases in a satellite courthouse. The question, then, is whether Defendant deprived Plaintiff of that right -- to be County Judge -- without due process of law.

Plaintiff claims that Defendant put him in such "a pickle" -- to use the phrase coined by Shakespeare -- that he was forced to resign.   The law generally presumes that a resignation is voluntary. *Hargray v. City of Hallandale*, 57 F.3d 1560, 1568 (11th Cir. 1995).  To determine whether a resignation is voluntary, courts must examine the surrounding circumstances to test the ability of the employee to exercise free choice. *Id.* There are two situations where an employee's resignation will be deemed involuntary, and thus a deprivation of due process: (1) where the employer forces the resignation by coercion or duress, or (2) where the employer obtains the

resignation by deceiving or misrepresenting a material fact to the employee. *Id.* Plaintiff alleges he was coerced by the alleged "notice of banishment" to resign. He claims that because his image was tarnished by the "notice of banishment," it would be unethical to force litigants to appear before him. This argument, however, contradicts his allegation that the docket was 'nonexistent" as of the date of his resignation, one business day after he received the reassignment. He also claims it would be unethical for him to stay home and collect a check when he was stripped of all his work.

Under the coercion or duress theory, the Court must consider whether under the totality of the circumstances, the employer's conduct deprived the employee of free will in choosing to resign. The Eleventh Circuit has stated that resignations can be voluntary even where the employee is facing termination for cause. "Resignations obtained in cases where an employee is faced with . . .unpleasant alternatives are nevertheless voluntary because 'the fact remains that plaintiff *had a choice*. [Plaintiff] could stand pat and fight." *Id.* This particular Plaintiff *put up no fight at all*. Within one business day of receiving the letter reassigning him to a satellite office, he resigned without notice to Chief Judge Tobin. *See Slattery v. Neumann*, 200 F. Supp. 2d 1367, 1371 (S.D. Fla. 2002) (stating employee must "act reasonably before choosing to resign," and such "[r]easonable conduct involves notifying the employer of improper behavior, and affording the employer an opportunity to correct the situation."). The letter indicated to Plaintiff that he should discuss his new docket assignment with Judge Zeller and the Clerk of Court. Plaintiff claims the Clerk of Court confirmed there was no docket, but Plaintiff did not even wait a full day to allow the Clerk to establish a docket. To say Chief Judge Tobin forced Plaintiff to resign is contrary to *Hargray*. Certainly, Plaintiff failed to "act reasonably" by choosing to resign within one business day.

Moreover, the law provides Plaintiff with a remedy short of resignation. If Plaintiff felt that

-10-

Chief Judge Tobin overstepped his authority, Plaintiff could seek Florida Supreme Court review of Chief Judge Tobin's directive. Not only does the Florida Supreme Court have jurisdiction to review judicial assignments and other administrative decisions by a Chief Judge, its jurisdiction to do so is exclusive:

> . . . we conclude that this Court has exclusive jurisdiction to review judicial assignments. . . [A] litigant who is affected by a judicial assignment made by a chief judge of a judicial circuit must challenge the assignment in the trial court and then seek review in this Court by way of petition for writ of prohibition or petition for relief under the "all writs" power.

*Wild v. Dozier*, 672 So. 2d 16, 17-18 (Fla. 1996).   Rather than resign his post immediately and without notice to the Court or the Supreme Court, Plaintiff could have pursued review of the judicial assignment. Plaintiff argues that he need not exhaust administrative remedies before filing suit under § 1983. While this is true in most cases, in this case, Plaintiff is a respected County Judge of twenty years and his complaint shows he undisputedly resigned one business day after receiving the reassignment letter. The facts as alleged do not show a constructive discharge depriving Plaintiff of his job without due process.

### b. Deprivation of Liberty Interest: Access to Courts

Without question, the allegations in the complaint do not establish that Defendant constitutionally deprived Plaintiff of his access to courts. "Whether an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost, the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong." *Christopher v. Harbury*, 536 U.S. 403, 414-15 (2002). For example, a prisoner bringing an access to courts claim is also typically challenging his conviction, the

underlying claim. *See e.g., Bounds v. Smith*, 430 U.S. 817, 828 (1977). It follows, then, that the "underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint. . . . " *Christopher*, 536 U.S. at 414, 416 ("Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant.").

Plaintiff complains that the reassignment letter, which he terms the "notice of banishment," constitutionally violated his personal access to the courts. The amended complaint says that Plaintiff could not access the library in the courthouse for research purposes and could not engage in litigation regarding personal matters. Absent from the amended complaint is the lost "litigating opportunity." In fact, Plaintiff states in the amended complaint that he obtained personal favorable judgments in two foreclosure actions. Under *Christopher*, then, there can be no cause of action for a denial of access to the courthouse.

In any event, it is quite clear Chief Judge Tobin's letter is addressed to Plaintiff in his capacity as a judge and refers to his "judicial duties." The letter is not addressed to Plaintiff in his individual capacity as a litigant. To read the letter to preclude Plaintiff from pursuing personal litigation is not only absurd, but inconsistent with the facts alleged in the complaint. It is clear that the Chief Judge's letter of reassignment to a satellite courthouse precluded Plaintiff from entering his old chambers in the central courthouse and use of the staff assigned to that location. Moreover, there is no allegation that Plaintiff was ever actually denied permission to file a lawsuit or even enter the central courthouse. Indeed, Plaintiff entered the central courthouse with permission the weekend after receiving Chief Judge Tobin's letter to obtain personal items from chambers. Accordingly, the allegations in the complaint do not establish an access to courts claim and the Chief Judge is

-12-

entitled to qualified immunity.

### c. Deprivation of Liberty Interest: Reputation

When a plaintiff sustains reputational damage in connection with a termination of employment, it may give rise to a procedural due process claim for deprivation of liberty which is actionable under section 1983. *Cotton v. Jackson*, 216 F.3d 1328, 1330 (11th Cir. 2000). Generally, however, a person's interest in reputation alone, "apart from some more tangible interests such as employment" is not a protected liberty interest under the due process clause. *Siegelman*, 322 F.3d at 1296 (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976)). "To establish a liberty interest sufficient to implicate the fourteenth amendment safeguards, the individual must be not only stigmatized but also stigmatized in connection with a denial of a right or status previously recognized under state law." *Id.* (quoting *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1302-03 (11th Cir. 2001)). Put more concretely, to recover under § 1983 for a procedural due process claim for deprivation of liberty, plaintiff must show that a (1) false statement, (2) of a stigmatizing nature, (3) attending governmental employee's discharge, (4) was made public, (5) by governmental employer, (6) without meaningful opportunity for an employee name-clearing hearing. *Cotton*, 216 F.3d at 1330; *Cypress Ins. Co. v. Clark*, 144 F.3d 1435, 1436-37 (11th Cir. 1998) ("This rule, labeled the 'stigma-plus' standard, requires a plaintiff to show that the government official's conduct deprived the plaintiff of a previously recognized property or liberty interest in addition to damaging the plaintiff's reputation.").

At issue is whether the Chief Judge's letter of reassignment or his comments or refusal to comment to the press stigmatized Plaintiff in connection with a denial of a right recognized under state law. The complaint does not establish the necessary connection.

-13-

As to the reassignment letter, there are no allegations that it contained a false statement about Judge Spechler, and further it was labeled confidential by Chief Judge Tobin.  Certainly, the allegations relating to the letter do not establish that Chief Judge discharged the Plaintiff, diminished his salary, or did anything else that "would. . . qualify as 'some more tangible interest[].'. . ." *United States v. Sigma Int'l, Inc.*, 300 F.3d 1278, 1280 (11th Cir. 2002) (quoting *Paul*, 424 U.S. at 701). The amended complaint merely states that the Chief Judge reassigned Plaintiff to a "nonexistent" docket. The letter actually states: "While you are assigned to civil traffic and parking ticket dockets at the satellite courthouses, the Clerk of Court will provide you with the dockets." Simply put, that is not the sort of "defamation" depriving Plaintiff of a tangible interest in violation of the Fourteenth Amendment.

Plaintiff alleges that Defendant's comments to the press -- more like no comment-- cast a shadow over Plaintiff's esteemed reputation in violation of the Fourteenth Amendment.  Plaintiff alleges that when the press inquired about the letter, Defendant indicated "it speaks for itself" and the Defendant's "terse responses were . . .calculated to cast a pall over the heretofore respected and esteemed reputation of Plaintiff." *See* Amended Complaint at ¶ 65.  Needless to say, Defendant's statement to the press does not constitute the type of stigmatizing damage to Plaintiff's reputation that constitutes a Fourteenth Amendment violation.

The allegations in the amended complaint do not establish any constitutional violations and Defendant Chief Judge Tobin is therefore entitled to qualified immunity.

### B. Standing

Though the Court has found  Defendant Chief Judge Tobin  has qualified immunity, the

Plaintiff also lacks standing. To have standing in federal court, a plaintiff must meet three requirements. First, he must have suffered an injury in fact: "an invasion of a legally protected interest." *Sicar v. Chertoff*, 541 F.3d 1055, 1059 (11th Cir. 2008) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* Second, there must be a causal connection between his injury and the conduct he challenges, i.e., his injury and the conduct he challenges, i.e., his injury must be fairly traceable to the challenged actions of the defendant. *Id.* Third, it must be likely that plaintiff's injury will be redressed by a favorable decision of the court. *Id.*

In this case, Plaintiff alleges that the "notice of banishment" and the reassignment to a "nonexistent" traffic docket is the type of injury that gives him standing to bring this case under § 1983. There is, however, no "causal connection" between Plaintiff's injury and Defendant's actions. Surely, the Court cannot find that Plaintiff's injury is "fairly traceable" to Defendant's actions. Rather, Plaintiff's own actions are what brought him injury. Plaintiff's decision to voluntary relinquish his post within one business day of receiving Chief Judge Tobin's reassignment and not pursuing any action to review the judicial assignment in the Florida courts is what led to any injury he suffered.

Moreover, there is no "causal connection" between Defendant's actions and the alleged harm to Plaintiff's reputation. In the amended complaint, Plaintiff asserts that in connection with the "notice of banishment," Defendant told the press "it speaks for itself" and that he had "no comment." Those types of comments cannot lead to the type of "concrete and particularized" injury required for the Court to find standing under *Lujan*. There are also vague assertions that Defendant spoke ill of Plaintiff to the Judicial Qualifications Committee. There is, however, no allegation that shows those

comments led to a "concrete and particularized" injury since the Judicial Qualifications Committee has no jurisdiction over non-judges.

Finally, the Court finds that Plaintiff lacks standing to bring an access to courts claim for the reasons previously stated. The Chief Judge's reassignment letter was presented to Plaintiff as a judge and not in his personal capacity as a litigant. Moreover, Plaintiff actually succeeded in obtaining judgments and therefore did not suffer any cognizable injury.


C. Sovereign Immunity: Florida Claims

Chief Judge Tobin moves to dismiss the state law claims based on sovereign immunity. The sovereign immunity statute states:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event , or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith . . ..The exclusive remedy for injury or damage suffered as a result of an act, event or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers shall be by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee.

§ 768.28(9)(a), Fla. Stat. (2007). This waiver of sovereign immunity must be strictly construed. *Maynard v. State, Dep't. of Corrections*, 864 So. 2d 1232, 1233-34 (Fla. 1st DCA 2004). As the Court previously held, Chief Judge Tobin was acting within the scope of his authority and pursuant to the Florida Rules of Judicial Administration when he reassigned Plaintiff to a satellite courthouse. Accordingly, this provision of sovereign immunity attaches and the state law claims must be

dismissed. [2]

D.  Dismissal of State Law Claims

Even if the sovereign immunity did not attach, the Court would dismiss the state law claims. As to the claims Plaintiff raises under the Florida Constitution, the Court does not find the provisions create a private right of action and there is no statute to this effect. *Gray v. Bryant*, 125 So. 2d 846, 851 (Fla. 1960).

The state law constructive discharge claim also fails because like federal law, Florida law requires the plaintiff to show, under an objective standard that the employer made working conditions so difficult that a reasonable person would feel compelled to resign. *Webb v. Fla. Health Care Mgmt. Corp.*, 804 So. 2d 422, 424 (Fla. 4th DCA 2001).  Having found Plaintiff acted unreasonably by resigning within one business day, the Court finds this cause of action must be dismissed.

Likewise, the claim for intentional infliction of emotional distress fails as Chief Judge Tobin's statements to the press do not rise to the level required to state a cause of action. *Gallogly v. Rodriguez*, 970 So. 2d 470, 471 (Fla. 2d DCA 2007).  In any event, Tobin is protected by absolute immunity for his statements to the press regarding the reassignment letter. *Cassell v. India*, 964 So. 2d 190 (Fla. 4th DCA 2007) ("An absolute privilege protects the statements of all public officials, regardless of the branch of government or the level of the official. . . The controlling factor in

---

[2]The amended complaint also fails to allege that Plaintiff provided presuit notice in compliance with Florida Statute § 768.28(6)(a), which provides that a written claim must be provided as a condition precedent to filing suit "against the state or one of its agencies or subdivisions."

deciding whether the absolute privilege applies is whether the communication was within the scope of the officer's duties. The scope of an officer's duties is to be liberally construed.") . The Court has already found that Chief Judge Tobin was acting within his discretion, and accordingly, dismisses this count of the amended complaint.

Finally, the Court dismisses Plaintiff's claim for false light invasion of privacy. The Florida Supreme Court recently declined to recognize such a cause of action. *Jews for Jesus, Inc. v. Edith Rapp*, 2008 WL 4659374 (S.D. Fla. Oct. 23, 2008).

DONE AND ORDERED in Chambers at Miami, Florida, this 10th day of December, 2008.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record

-18-

**VICTOR TOBIN**
CHIEF JUDGE
SEVENTEENTH JUDICIAL CIRCUIT



BROWARD COUNTY COURTHOUSE
ROOM 801A
201 S.E. 6TH STREET
FT LAUDERDALE, FLORIDA 33301
(954) 831-6332

### VIA HAND DELIVERY

March 27, 2008

Honorable Jay S. Spechler
Room 425
Broward County Courthouse
201 S.E. Sixth Street
Fort Lauderdale, Florida 33301

Dear Judge Spechler:

This will serve as notice of your reassignment to civil traffic and parking ticket cases at the satellite courthouses for Broward County, Florida effective March 28, 2008. You are not to return to the Central Courthouse except at my direction. I am also requesting you provide me with a telephone number where you may reached with regard to your judicial duties. Your judicial assistant, Lori Brave, shall continue to provide support for County Civil Division 52.

While you are assigned to civil traffic and parking ticket dockets at the satellite courthouses, the Clerk of Court will provide you with the dockets. You will communicate with the staff for the Clerk of Court and Judge Zeller to determine dates and times for dockets.

Sincerely,

Victor Tobin,
Chief Judge

**EXHIBIT**

CASE
NO.      08-61130

EXHIBIT
NO.        A





JAY S. SPECHLER
COUNTY COURT JUDGE
SEVENTEENTH JUDICIAL CIRCUIT OF FLORIDA

BROWARD COUNTY COURTHOUSE
FORT LAUDERDALE, FLORIDA 33301

Office of the Governor
The Capitol
400 South Monroe Street
Tallahassee, Fl. 32399

March 31, 2008

Dear Governor Crist:

Please allow this to serve as notice of my resignation as Broward County Judge effective
Monday, March 31, 2008 at 5 P.M.

It has been an honor and privilege to have served the people of Broward County and the
State of Florida during the past 20 years.

I look forward to continue working in the legal system in the future.

Cordially,

Jay Spechler
Broward County Judge

**EXHIBIT**

CASE NO. **08-61130**

EXHIBIT NO. **B**

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT, IN
AND FOR BROWARD COUNTY, FLORIDA

ADMINISTRATIVE ORDER NO.: VI-07-A-1A

IN RE:

COUNTY COURT SYSTEM
BROWARD COUNTY, FLORIDA

_____/

    In accordance with the authority vested in the Chief Judge by Rule 2.215 of the Florida Rules of Judicial Administration, effective April 1, 2007, it is

ORDERED that:

## STRUCTURE OF COUNTY COURT SYSTEM

    There are four County Court locations in Broward County including the Central Courthouse, each of the locations, exclusive of the Central Courthouse, is known as a satellite court facility and shall be designated as the South Satellite Courthouse, West Satellite Courthouse and North Satellite Courthouse. Effective immediately, all municipal ordinance violations, traffic infractions and misdemeanors, and Broward County ordinance violations shall be processed and heard in the County Court locations assigned to the initiating municipality or agency, as follows:

### CENTRAL COURTHOUSE

Fort Lauderdale

Florida Atlantic University Police Department

### NORTH SATELLITE COURTHOUSE

Coconut Creek Police Department
Coral Springs Police Department
Hillsboro Beach Police Department
Lighthouse Point Police Department
Wilton Manors Police Department
Margate Police Department
Tri-Rail
BSO District 10 (Deerfield Beach)
BSO District 13 (Lauderdale-by-the-Sea)
BSO District 15 (North Lauderdale)
BSO District 17 (Parkland)
Division of State Fire Marshall Cases

Sea Ranch Lakes Police Department
Lazy Lake Police Department
Florida Highway Patrol
BSO Fatality Cases
 (offenses occurring North of Oakland Park
  Boulevard or offenses occurring in the
  municipalities returnable to the North Satellite)
BSO District 11 (Pompano Beach)
BSO District 12 (Oakland Park)
Division of Driver's License
 (Pompano and Margate Offices)
"Smoking in Public Violations"
 (Florida Statutes, Section 386.204)





**EXHIBIT**

CASE NO. 08-61130

EXHIBIT NO. C

## SOUTH SATELLITE COURTHOUSE

Hollywood Police Department
BSO District 1 (Pembroke Park/West Park)
Pembroke Pines Police Department
Florida Fresh Water Fish and Game
 Commission
Miccosukee Police Department
Florida Marine Patrol
Broward County Animal Care
 and Regulation (appeals only)
Seaboard Coast Railroad
Department of Motor Vehicles
All other State Agencies
BSO District 3 (Airport)

Hallandale Police Department
Miramar Police Department
BSO District 2 (Danny)
BSO Fatality Cases
 (offenses occurring South of Oakland Park Blvd.
 or offenses occurring in the municipalities
 returnable to the South Satellite)
Department of Transportation
Division of Driver's License
 (Hallandale, Pembroke Pines and Hollywood
 offices)
Division of Forestry
BSO District 14 (Port Everglades Authority

## WEST SATELLITE COURTHOUSE

BSO District 4 (Lauderdale Lakes)
BSO District 5 (West of Ft. Lauderdale)
City of Lauderhill
Davie Police Department
BSO District 8 (Weston)
BSO Fatality Cases (offenses occurring
 In the municipalities returnable to the
 West Satellite)
Driver's License Bureau (Tamarac & Lauderhill)
Broward County Animal Care & Regulation
 (adjudication of animal care violation)
BSO District 9 (South West Ranches)

Plantation Police Department
Sunrise Police Department
BSO District 6 (Courthouse)
BSO District 7 (Tamarac)
BSO District 16 (Cooper City)
Office of Toll Operations
Seminole Indian Reservation
Florida Division of Alcohol & Tobacco
BSO Support Services & all other non-
 district personnel
Florida Highway Patrol

   The location of each Satellite Courthouse shall be determined by the Broward County Board of County Commissioners.

   DONE AND ORDERED in chambers in Fort Lauderdale, Broward County, Florida this 11th day of May 2007, nunc pro tunc to April 1, 2007.


                              /s/DALE ROSS
                              DALE ROSS, Chief Judge